SUPERINTENDENT OF POOR OF CATTARAUGUS COUNTY v. SUPER-INTENDENT OF POOR OF ERIE COUNTY.

(Supreme Court, General Term, Fifth Department. January 18, 1893.)

INSANE PAUPER—WIFE—SETTLEMENT.

A wife who had lived with her husband for many years became insane, and was supported as an insane pauper in an asylum, by the town of which both she and her husband were legal residents. Her husband meanwhile removed into another county, and gained a legal residence there. *Held,* under 2 Rev. St. (Birdseye's Ed.) p. 2259, § 16, subd. 1, declaring the husband's settlement to be the settlement of the wife, if the parties have been married and living together for a year, that a discharge of the wife from the asylum, procured by the husband, and her removal by him to his residence, where she lived for several months without being either a town or county charge, made her a legal resident of the county in which her husband was domiciled, and that, on the wife's subsequently becoming again insane, such county, and not the county of her former residence, was liable for her support as an insane pauper.

Case submitted on agreed statement.

Submission of a controversy between the superintendent of the poor of the county of Cattaraugus and the superintendent of the poor of the county of Erie on an agreed statement. Judgment ordered for plaintiff on the submission.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

N. M. Allen, for plaintiff.

Allen & Butterfield, for defendant.

MACOMBER, J. Under this submission the plaintiff seeks to recover of the defendant the sum of $100, being the amount of expenses which he had incurred in behalf of one Anna Moynahan, an insane pauper. The facts are as follows: Anna Moynahan was married to Michael Moynahan, of Jamestown, Chautauqua county, in the year 1877. At that time Michael Moynahan resided in the town of Cold Spring, in the county of Cattaraugus, N. Y., and his wife's residence, prior to her marriage, was at Hamilton, Can. After their marriage these persons lived at Cold Spring, in the county of Cattaraugus, and so continued there until the year 1888, when they removed to Elmira, N. Y., and there remained 11 months. While in Elmira, Anna became insane, and she was placed in a public hospital there. The overseer of the poor of the city of Elmira notified the overseer of the poor of the town of Cold Spring of this fact; whereupon the latter removed Anna to Cat-

taraugus county, and placed her in the insane asylum there on the 12th day of July, 1889, where she remained until the 31st day of October, 1891, when she was discharged from that asylum. During all the time she was maintained at this asylum it was at the expense of the town of Cold Spring, and not at the expense of the county of Cattaraugus. She was committed to the asylum as an insane person, and as a proper person for care and treatment, under the provision of chapter 446 of the Laws of 1874, on the certificate of two physicians, approved by the county judge of Cattaraugus county. In the month of October, 1889, Michael Moynahan removed from the city of Elmira, where he had lived 11 months, to the city of Buffalo, in the county of Erie, where he has continuously ever since resided, "and is a householder and keeps house thereat." At the request of her husband, the wife, Anna, was discharged by the attending physician from the asylum in Cattaraugus county, and the discharge was approved by the county judge; whereupon she left the asylum, in company with her husband, and went with the latter to the city of Buffalo, where the husband then resided, and remained with him in that city until the 18th day of February, 1892, when the husband brought her back to the asylum in Cattaraugus county by the advice and direction of the defendant, who denied the liability of Erie county in the premises; and she was left, under the protest of the keeper of the asylum, as a charge upon the county of Cattaragus, the authorities of Cattaraugus county claiming that her residence and settlement was that of her husband, in the county of Erie, and that in no event was the county of Cattaraugus obligated for her support, but that the county of Erie was so obligated by reason of her husband residing in that county. Neither Michael, the husband, nor Anna, the wife, has ever received any support or assistance from city, town, or county officers in any way except the support which Anna received while at Machias, in the county of Cattaraugus, at the insane asylum, from the 12th day of July, 1889, to the 31st day of October, 1891. Under proceedings provided for by law relating to insane persons improperly removed from one county to the other, the question of liability of the county of Cattaraugus or of the county of Erie in the premises is presented.

Out of the facts agreed upon in this submission, this controlling inference is to be drawn, namely, that when Michael Moynahan removed his wife, Anna, from Cattaraugus county to Erie county, in October, 1889, she ceased to be an insane pauper, within the provision of the statutes. The submission is somewhat obscure and indefinite as to whether Anna Moynahan was discharged as cured from the insane asylum of Cattaraugus county at this time; but there is no fact stated in the submission which would preclude the inference to be drawn that she was no longer town or county charge when her husband removed her to his residence in the city of Buffalo, in the county of Erie, where the husband had had his domicile, having removed from Chemung county in the month of October, 1889. We think that, on the whole, Michael Moynahan, the husband, had a legal settlement in the county of Erie by reason of his continuous residence there from the month of October,

1889, to the month of August, 1892, and that the settlement of the wife was that of the husband during this time, and certainly from the time of her removal from the county of Cattaraugus to his residence in Erie county, and that Michael Moynahan acquired a settlement in the county of Erie, together with his wife, within the meaning of the statute. 2 Rev. St. (Birdseye's Ed.) p. 2259, § 16, subd. 1, provides that a settlement may be gained, "if a female, by being married and living for one year with her husband, in which case the husband's settlement shall determine that of his wife." The parties had a settlement, within the meaning of the statute, at Cold Spring, Cattaraugus county, immediately following their marriage. It is not necessary to inquire, in this connection, whether a settlement was acquired by them in the county of Chemung. or not. The wife went back to Cattaraugus county, and soon thereafter the husband obtained his settlement in the county of Erie. There is nothing in the submission before us to indicate that the removal by the husband of his wife from the county of Cattaraugus to the county of Erie was for any other purpose than that she should reside with him in the latter county as his wife. The submission is silent as to whether she was supposed to be cured of her insanity at this time. Immediately upon going to the county of Erie she did not become a charge upon that county, but lived with her husband, and, for aught that appears, her settlement, following that of her husband, was in the county of Erie when she again became insane and a county charge. In these circumstances it was illegal for the poor authorities of the county of Erie to require the husband to remove his wife back to the county of Cattaraugus, and consequently this action may be maintained for the recovery of the said sum which, it is agreed, had been expended for the support and maintenance of the insane pauper by the county of Cattaraugus. It follows that under the submission the plaintiff is entitled to recover the sum of $100 as the necessary expenses of maintaining this insane pauper since the 18th day of February, 1892, to the time of this submission.

Judgment ordered for the plaintiff on the submission. All concur.